**Walter L. ROGERS, Petitioner,**

v.

**Carl HOCKER, Warden, Nevada State Prison, Respondent.**

**Civ. No. R–2597.**

United States District Court,
D. Nevada.

March 1, 1972.

Walter L. Rogers in pro. per.

Robert List, Atty. Gen. of Nev., Carson City, Nev., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

BRUCE R. THOMPSON, District Judge.

On February 12, 1965, Walter L. Rogers, armed with a sawed-off shotgun, committed several robberies in Reno

area businesses. Rogers fired the shotgun while committing each of the robberies.

While robbing the Eagle Bar in Reno, Rogers shot and killed a patron, Newton S. Smalley, who was seated at the bar. Rogers was tried and convicted of the murder of Mr. Smalley. He was then sentenced to life imprisonment without possibility of parole.[1]

On appeal to the Nevada Supreme Court, the conviction was affirmed. Rogers v. Nevada, 83 Nev. 376, 432 P.2d 331 (1967).

In 1968, Rogers filed his first post-conviction application under the Nevada Post-Conviction Procedure Act, N.R.S. 177.315–177.385. The application was dismissed and Rogers did not perfect an appeal.[2]

In 1969, Rogers filed a second post-conviction application to the Nevada District Court. The District Court's denial of relief was affirmed on appeal. Rogers v. Warden, 86 Nev. 359, 468 P.2d 993 (1970).

Petitioner now has tendered a petition for a writ of habeas corpus, accompanied by an adequate pauper's oath. Petitioner first alleges that he was denied a cross-section of jurors at his trial since jurors who were opposed to the death penalty were excused. This contention was raised earlier by Petitioner in his first post-conviction application to the state court. The state court there held that the mandates of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), applied only where the jury returned a death penalty. The *Witherspoon* court, at page 523, note 21, 88 S.Ct. at page 1777, stated: "Nor does the decision in this case affect the validity of any sentence *other*

than one of death." See Bumper v. North Carolina, 391 U.S. 543, 545, 88 S. Ct. 1788, 1790, 20 L.Ed.2d 797 (1968): "Our decision in Witherspoon does not govern the present case, because here the jury recommended a sentence of life imprisonment." Petitioner has filed a statement withdrawing this point from consideration.

Petitioner next alleges that the shotgun and shells used in evidence against him were obtained by means of an illegal search and seizure. Petitioner did not seek to suppress this evidence prior to trial nor did he object when it was offered into evidence during the trial. He did not raise this issue on direct appeal or in the first post-conviction proceeding. He did, however, raise this issue in his second post-conviction application four years subsequent to the original conviction.

On appeal from the state district court, the Nevada Supreme Court, 468 P.2d at 994, refused to entertain the assertion due to Petitioner's unexplained failure to attack the introduction of the evidence in earlier proceedings. Hence, this Court is faced with a novel question, i. e., what, if any, effect should be given to Petitioner's failure over the years to raise his contention in the state courts, especially in light of the new Nevada post-conviction statute.

Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), gave federal relief to a petitioner who was refused state post-conviction redress because of a failure to directly appeal his conviction. The Supreme Court found good reason for Noia's failure to appeal, since a successful appeal and new trial might have subjected him to a more severe penalty.[3]

---

1. Rogers, in his petition to this Court, agreed to the facts of the case as set out in the two Nevada Supreme Court opinions *infra.* Thus the facts as presented in the Nevada opinions are accepted as true. Jack v. Rhay, 366 F.2d 191, 192 (9th Cir. 1966); Linden v. Dickson, 287 F.2d 55, 58 (9th Cir. 1961). This Court has nevertheless reviewed the complete transcript of the state court proceedings.

2. N.R.S. 177.345 provides for court-appointed counsel for an indigent post-conviction relief petitioner. Rogers does not assert that he sought counsel, although available to him at the time.

3. For a good discussion of modern by-passing, see United States ex rel. Schaedel v. Follette, 275 F.Supp. 548 (D.C.N.Y.1967).

Since the time of *Fay*, members of the federal judiciary have advocated reform of state procedures to allow for state consideration of the post-conviction claims of its prisoners. George Cochran Doub, in his article "Federal Habeas Corpus", 57 ABAJ 323, 325 (1971), quotes Justice Warren Burger's statement:

"There is a solution for the large mass of state prisoner cases in federal courts—12,000 in the current year. If the states will develop adequate post-conviction procedure for their own state prisoners, this problem will largely disappear and eliminate a major source of tension and irritation in state-federal relations."

Doub goes on to echo a similar 1966 statement by Chief Judge Lumbard:

"We shall recommend adoption by the states of adequate remedies so that federal court review of state convictions will be reduced to a minimum and the facts on which such federal relief is sought will, so far as possible, be found and determined by the state court."

In response to this urging, many states have passed post-conviction relief acts or otherwise modified existing procedures to afford adequate collateral relief for their prisoners.[4] The Nevada statute was initiated, at least in part, by a letter written by the author of this opinion to state legislative officials. Many of the acts were liberally written so as to afford as full and fair a review as is available under 28 U.S.C. § 2255; indeed, some of the state acts were based directly on the federal statute.[5] Others, such as Nevada's, are based on the Second Revised Uniform Post-Conviction Procedure Act, approved by the Conference and the American Bar Association House of Delegates in August, 1966.[6]

The burden upon the courts in states which have assumed their responsibility to afford adequate collateral relief to prisoners is no mean one.[7]

"Probably the most pressing condition forcing a revision in post conviction procedure, however, is the tremendous increase in case load and undocketed work in the Wisconsin Supreme Court. Although the overload is not exclusively the result of increased numbers of habeas corpus petitions, the large increment in petitions after the decision in Gideon v. Wainwright [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)] accounts for a good portion of the court's presently increased workload. The result has been an increasingly crowded docket, with the danger that the court will fall further and further behind in the disposition of cases brought before it."[8]

---

4. The following states and dates of enactment were found in ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Post-Conviction Remedies, Approved Draft (1968), at page 112; comment, 1970 Wis.L.Rev. 1145, 1151 (1970); Jacob and Sharma, Justice After Trial, 18 Kan.L.Rev. 493, 517 (1970); and through independent research: Alaska (1968), Arizona (1956), Arkansas (1965), Colorado (1964), Delaware (1969), Florida (1968), Georgia (1967), Idaho (1967), Illinois (1964), Iowa (1970), Kansas (1964), Kentucky (1962), Louisiana (1966), Maine (1969), Maryland (1967), Minnesota (1967), Missouri (1953), Montana (1967), Nebraska (1967), Nevada (1967), New Jersey (1965), New Mexico (1966), New York (1959), North Carolina (1967), North Dakota (1969), Ohio (1968), Oklahoma (1970), Oregon (1968), Pennsylvania (1969), South Carolina (1969), South Dakota (1966), Tennessee (1967), Vermont (1969), West Virginia (1967), Wisconsin (1969), Wyoming (1969).

5. See Comment, 1970 Wis.L.Rev., op. cit, supra, n. 4, at 1151, n. 53.

6. See Approved Draft, op. cit. supra, n. 4, at 102–110.

7. Symposium: Habeas Corpus—Proposals for Reform, 9 Utah L.Rev. 18, 21 (1964).

8. Comment, 1970 Wis.L.Rev., op. cit. supra, n. 4, at 1149–50.

**1120**

To somewhat alleviate this situation, several states[9] have incorporated in their post-conviction procedure laws a section requiring that all a petitioner's claims be combined in one application. Nevada, in N.R.S. 177.375, quotes the Second Revised Uniform Post-Conviction Procedure Act directly in this regard:

> "All grounds for relief available to an applicant under this Act must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application."

It is on the basis of this provision of the Nevada post-conviction relief statute that Petitioner failed in his second post-conviction attempt in the Nevada courts. As the Court stated, in Rogers v. Warden, *supra*, 468 P.2d at 994–995:

> "Even though a petitioner may file successive writ applications under the Act, the court is not required to entertain such petitions unless the petitioner satisfactorily explains in his later application for relief why he failed to assert the grounds that he had available to him in his 'original, supplemental or amended petition * * *.
>
> " * * *
>
> "Rogers, having failed to offer in this present application for post-conviction relief any explanation for his failure to (1) move prior to trial to suppress the objectionable evidence, (2) object to its admission during trial, or (3) assert the grounds for relief in his first post-conviction application, is barred from doing so in his second post-conviction application."

At first glance, it would appear that under Fay v. Noia, Petitioner's procedural defaults are no bar to federal habeas corpus consideration of his contentions. As stated by the Court, in *Fay*:

> "The doctrine under which state procedural defaults are held to constitute an adequate and independent state law ground barring direct Supreme Court review is not to be extended to limit the power granted the federal courts under the federal habeas corpus statute." Fay v. Noia, *supra*, 372 U.S. at 399, 83 S.Ct. at 827.

But, as mentioned *supra*, since the time of *Fay*, the states have done much to afford a prisoner full and fair due process in their courts vis-a-vis post-conviction relief. We are no longer talking about the situation where a petitioner was unable to obtain state relief merely because of a failure to directly appeal his conviction. Instead, we have a petitioner who has failed, upon three available occasions, to present his contention to the state and who consequently is denied a fourth chance.

■ For this Court, under the instant circumstances, to consider Petitioner's claim would surely be offensive to the State of Nevada. Enough conflict already exists between state and federal courts in the matter of federal habeas corpus. As stated by Chief Justice Oscar R. Knutson of the Minnesota Supreme Court, in an address to the Eighth Circuit Judicial Conference, 50 F.R.D. 427, 436 (1970):

> "I think I can speak for the judges of our state when I say that we would have no objection to an appeal from our decision to the Supreme Court of the United States, but the conflict that has arisen between state and federal judges is based mainly on the fact that after a petitioner is given a hearing in a state court his petition is heard over again in federal court as though it were an original proceeding. Personally, I think that is a mistake.

---

9. Including states using 28 U.S.C. § 2255 as a basis for their post-conviction relief acts. Id. at 1151, n. 58.

If we can eliminate that duplication of effort in states where adequate hearings are provided, I believe we will have gone a long way in disposing of any conflict between state and federal judges."

Should this Court hear Petitioner's claims, it is, in effect, telling the State of Nevada that the procedural requirement of N.R.S. 177.375 is unworthy of consideration. Such is surely not the case. As quoted in Rogers v. Warden, *supra,* 468 P.2d at 994, the Conference of Commissioners on Uniform State Law stated:

"Many petitions for habeas corpus or other post-conviction relief are repetitious; others often are specious. This places an unnecessary burden upon the courts. It is highly desirable that a petitioner be required to assert all of his claims in one petition. His failure to assert them constitutes a waiver. The way is left open, however, for a subsequent petition if the court finds grounds for relief that could not reasonably have been raised in the original petition."

Nevada has a legitimate state interest in trying to prevent such a multiplicity of petitions, and for this Court to thwart that interest would be a perversion of both federalism and justice.

The operable facts governing decision are (1) Petitioner was represented by competent counsel before and at the trial on the murder charge; (2) no pre-trial motion to suppress the claimed illegally seized evidence was made; (3) no contemporaneous objection to the introduction of the claimed illegally seized evidence was made at the trial; (4) Petitioner was represented by competent counsel on appeal; (5) the question of a possible illegal search was not raised on appeal; (6) Petitioner filed a state post-conviction remedy petition in 1968; he did not request the assistance of counsel; his only point was unconstitutionality in the jury selection process; the petition was dismissed and Petitioner did not perfect his appeal; and (7)

Petitioner filed his second state post-conviction remedy petition in 1969 raising, for the first time, the question of illegal search; he was not represented by counsel but had the advice of a knowledgeable fellow inmate; he did not request counsel; the second petition alleged no "sufficient reason" for failure to raise the illegal search issue in the first petition; the petition was denied in reliance on N.R.S. 177.375; on appeal, an attorney was appointed and the Supreme Court affirmed the trial court.

The Nevada courts have never reached the merits of the illegal search issue. They have consistently asserted the integrity of the Nevada procedural system and the pervading state interest in the maintenance of that system in the fulfillment of the orderly due process which the system provides.

Throughout the proceedings, this Petitioner has just as consistently ignored state procedural privileges and requirements. He made no pre-trial motion to suppress, he did not object to the evidence at trial, he made no mention of the issue on direct appeal, he ignored the illegal search issue in his first post-conviction petition and did not request the assistance of counsel; he pleaded no excuse in his second post-conviction petition for not earlier raising the illegal search issue and again failed to request the assistance of counsel. He has exhausted his presently existing state court remedies only because he ignored those which were available.

Now, for the first time in the petition to this Court, Petitioner pleads ignorance of the law and the vicissitudes of maximum security confinement as the "sufficient reason" for his neglect of state remedies and he seeks his first evidentiary hearing in this Court on the preliminary issues of deliberate by-pass of state procedural requirements and of waiver of the illegal search contention and also on the merits of the illegal search issue.

This Court is cognizant of decisions like United States ex rel. Linde v. Brier-

ly, 437 F.2d 324 (3rd Cir. 1970), reversing Linde v. Brierley, 323 F.Supp. 41 (W.D.Pa.1969), and requiring a federal court evidentiary hearing on the issue of waiver. But the point is of such importance in federal-state relations in the administration of the criminal laws and in resolving the endless merry-go-round of post-conviction petitions that it deserves another chance in a Circuit which decided Nelson v. People of the State of California, 346 F.2d 73 (9th Cir. 1965).

Since Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), there has been marked improvement, as we have noted, in state procedures and remedies. The federal law has been amended as well (28 U.S.C. § 2254) looking toward the avoidance of a proliferation of state and federal post-conviction hearings and the adoption of state findings made on sufficient evidence after an adequate hearing. The statutory amendments echoed the Supreme Court's views as expressed in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). Yet, how is federal deference to the state fact finding process to occur if a prisoner is permitted to ignore reasonable procedural requirements which serve to activate the state fact finding machinery?

In my view, it is no answer to say he is entitled to an evidentiary hearing for the first time in a federal court at least on the issues of waiver and deliberate by-pass. Such a pronouncement solves nothing. From the point of view of conservation of judicial, prosecutorial and defense time and talent, the Petitioner might better be given a hearing on the merits of the illegal search issue, thus ignoring the elaborate and time-consuming state post-conviction procedures enacted for Petitioner's benefit.

■ Nevada must not be required to entertain more than one post-conviction petition from the same petitioner absent a showing of good cause. The Nevada appellate and post-conviction procedures afford a prisoner a full and fair opportunity for relief. The failure of Petitioner to avail himself of any of the opportunities to raise his claim in the state courts constitutes a legitimate state ground which this Court must respect by refusing to hear his claims in federal habeas corpus.

■ An independent, subordinate ground for denying federal relief at this juncture is that Petitioner has failed to exhaust his state remedies as required by 28 U.S.C. 2254(b). As noted, the Nevada statute (N.R.S. 177.375) does provide for subsequent petitions for post-conviction relief if "the Court finds a ground for relief asserted which for reasonable cause was omitted or inadequately raised in the original, supplemental or amended petition."

The state post-conviction relief procedures thus specifically provide for consideration by the state courts of the issues of waiver, deliberate by-pass, inadequate representation by counsel, or what have you. We think it obvious that these issues, as well as the constitutional issue of claimed illegal search, must first be presented to the state courts for consideration, hearing, findings and decision. The state will consider the alleged constitutional violation if "reasonable cause" is shown. This Petitioner, at this juncture, has available the state remedy of filing a third post-conviction petition in which he should allege his "reasonable cause" for having failed to raise the illegal search issue in the proceedings resulting in conviction and in his first post-conviction petition and for having failed to state such "reasonable cause" in his second post-conviction petition. We have unswerving confidence that the Nevada courts will give full, compassionate judicial consideration to the grounds for reasonable cause which may be presented to them if Petitioner will simply invoke the remedies which exist. We emphasize, again, that Nevada does provide for court-appointed

counsel to assist in presentation of post-conviction petitions, although it is recognized that many prisoners prefer to represent themselves. Accordingly, it hereby is ordered:

1. The Petition shall be filed in forma pauperis.

2. The Petition is hereby denied.